## TAYLOR v. ALANREED INDEPENDENT SCHOOL DIST.

### No. 5178.

Court of Civil Appeals of Texas. Amarillo.

Feb. 5, 1940.

James W. Harvey, of Archer City, for appellant.

Hill & Adkins, of Shamrock, for appellee.

STOKES, Justice.

This suit was filed by the appellee School District against appellant upon its claim for taxes assessed for the year 1937 and to foreclose its tax lien upon 15,573 acres of land belonging to appellant. The record shows that appellant also owned some 600 head of cattle, all of which was rendered by him for taxes at a total valuation of $77,860. The board of equalization for the school district, after due notice to the property owners, held a hearing at which appellant and other witnesses appeared and, after the hearing, appellant's assessment was raised by the board to $106,213 upon which, the school district alleges, the amount of taxes owing by him is $1177.86.

Appellant tendered into court the sum of $778.60, which would have been the amount due by him for taxes for the year mentioned upon the valuation placed by him upon his property and prayed that the school district be required to accept that amount in full of its claim for taxes for the year mentioned. .

The case was submitted to the court without the intervention of a jury and resulted in a judgment against appellant in favor of the school district for $1215.94, which included the taxes, interest and penalty, together with costs of court.

. Appellant excepted to the judgment, gave notice of appeal, and presents the case in this court upon three assignments of error in which he contends the judgment should be reversed because, first, the board of equalization disregarded the provisions of sub. 3, Art. 7206, R.C.S.1925, in classifying the lands of the district for taxation; secondly, the board of equalization did not attempt to fix an equal and uniform valuation on all of the property of the district and, thirdly, the board acted in an arbitrary manner in placing a valuation upon his property which resulted in discrimination against him.

■ The record shows that practically all of the land in the school district is grazing land and used as stock farms and ranches. The board of equalization did not follow strictly the provisions of sub. 3, Art. 7206, and classify the lands of the district into three separate classes, but we do not understand that provision to be mandatory. It is held by the courts that where the taxable property is assessed upon substantially a uniform basis of equality and in proportion to its value, the failure strictly to follow the provisions of the subdivision mentioned does not render void the judgment of the board of equalization. State v. Mallett Land & Cattle Co., 126 Tex. 392, 88 S.W.2d 471. Unless it is shown, therefore, that appellant's property was not assessed fairly in proportion to its value and upon a basis of equality and uniformity with other property in the district or that the board discriminated against him in the manner in which his property was assessed, his first contention is without merit.

■ The equalization board was composed of J. M. Hill, G. E. Castleberry and M. C. Burdine. These parties, together with other witnesses, testified in the case and their testimony indicates that they adopted $6 per acre as a basis for the valuation of ranch lands and assessed it at a greater valuation according to improvements, accessibility to the highway, character of soil, and fitness for farming purposes. Some farming land in the district was assessed as high as $14 an acre but none less than $6 an acre. Witnesses introduced by appellant testified that his land was of a value not exceeding $5 an acre and appellant placed it at $4 an acre. Witnesses for the school district, however, placed its value at from $7.50 to $8 per acre and one of the members of the board of equalization gave it as his opinion that there was no substantial market value for the land on January 1, 1937, but that its actual value was around $10 an acre. It was shown that the Johnson ranch, which evidently was located in the same neighborhood as appellant's land, was slightly better and of slightly greater value than appellant's land, and the Johnson ranch was assessed at $6.50 per acre. The record indicates that appellant's land was of about the same general character as other ranch lands in the district.' Thus it will be seen that the board of equalization assessed appellant's land at about the lowest figure at which any land in the district was assessed and a number of tracts were assessed at a much higher figure. No discrimination, therefore, was shown as to appellant's ranch in so far as the valuation placed upon his land is concerned. There is ample testimony to the effect that the value of appellant's land was $8 to $10 an acre. The contention of appellant that the method used by the board in assessing his land resulted in discrimination against him is, therefore, without merit.

■ The third contention made by appellant is that the board of equalization acted in an arbitrary manner in fixing the valuation of his property for taxing purposes. The record shows that the board heard evidence of, and gave consideration to, a number of elements in arriving at the valuation of appellant's property. Among them was the topography of the land, its distance from the highway, its suitability for ranching or farming purposes, the amount of improvements located upon it, the possible returns as ranch property, and a number of other elements which go to make up the market value of land. The testimony of the members of the board and the record generally show that the board exercised a commendable effort to arrive-

at the market value of appellant's land. It was shown that no sales of such land had been made in the community in recent times and that the demand upon the market for such land was practically nil. There is no suggestion in the testimony that the board adopted any method that was illegal or arbitrary in arriving at the taxable values nor that any scheme or method that could be classed as fundamentally wrong was adopted. The testimony shows that the board decided to assess the land and personal property of the district at approximately 85% of its market value. They assessed cattle at $20 per head, while the record shows that cattle were probably worth $40 per head, but the difference between the apparent 50% of the value of cattle and 85% of their value could easily be accounted for by the difference in ages and conditions and the relative number of beef and stock animals. It was also shown there were two small stocks of merchandise located at a community center in the district and they were assessed at 50% of the invoice price. Appellant contends that the valuation placed upon the merchandise at 50% of its invoice prices constituted a discrimination against him, since his land was assessed at 85% of its value. The record does not show the actual market value of the stocks of merchandise, nor that 50% of their invoice price did not constitute 85% of their actual market value in the community.

It is well settled law in this state that if a board of equalization makes a bona fide effort fairly and honestly to assess taxable property at a fair, just, equal and uniform valuation for taxing purposes, even though it may make mistakes in arriving at the exact market value, its actions are not subject to review by the courts. State v. Mallett Land & Cattle Co., 126 Tex. 396, 88 S.W.2d 471; Texas & P. Ry. Co. v. City of El Paso, 126 Tex. 86, 85 S.W.2d 245; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; Hinkson v. Lorenzo Independent School District, Tex.Civ.App., 109 S.W.2d 1008.

We have examined all of the contentions, assignments of error and propositions of law presented by appellant and none of them, in our opinion, presents reversible error. The testimony does not reveal any bad faith on the part of the board nor the adoption by it of any illegal plan, scheme or method that could be considered fundamentally wrong in arriving at the assessed valuation of property. On the other hand, the record shows the board acted in a legal manner throughout and made every reasonable effort to arrive at a fair and just valuation to be placed thereon.

We find no error in the record and the judgment of the trial court will, therefore, be affirmed.